**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| TITAN SYSTEMS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 24-cv-1286-LKG |
| v. ) | |
| ) | Dated:  March 31, 2026 |
| SRI INTERNATIONAL, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION**

## I.     INTRODUCTION

In this civil action, the Plaintiff, Titan Systems, LLC ("Titan"), brings Lanham Act, unjust enrichment and breach of implied-in-fact contract claims against the Defendant, SRI International ("SRI"), arising from SRI's use of the term "MADDIS" in certain briefing materials that SRI presented to Congress.  *See generally* ECF No. 11.  SRI has moved for summary judgment on these claims, pursuant to Fed. R. Civ. P. 56.  ECF Nos. 54 and 54-1. Titan has also filed a cross-motion for partial summary judgment on its Lanham Act and breach of implied-in-fact contract claims and SRI's second affirmative defense, pursuant to Fed. R. Civ. P. 56.  ECF Nos. 57 and 57-1.

These motions are fully briefed.  ECF Nos. 54, 54-1, 57, 57-1, 60 and 61.  No hearing is necessary to resolve the motions.  *See* L.R. 105.6 (D. Md. 2025).  For the reasons that follow, the Court: (1) **GRANTS-in-PART** and **DENIES-in-PART** SRI's motion for summary judgment (ECF No. 54); (2) **DENIES** Titan's cross-motion for partial summary judgment **(**ECF No. 57); (3) **ENTERS JUDGMENT** summarily in favor of SRI on Counts II and III of the amended complaint (ECF No. 11); and (4) **DISMISSES** Counts II and III of the amended complaint.

II.    **FACTUAL AND PROCEDURAL BACKGROUND**[1]

A.    **Factual Background**

In this civil action, Titan brings Lanham Act, unjust enrichment and breach of implied-in-fact contract claims against SRI, arising from SRI's use of the term "MADDIS" in certain briefing materials that SRI presented to Congress.  *See generally* ECF No. 11.  Specifically, Titan asserts the following three claims against SRI in the amended complaint: (1) Lanham Act trademark violation under 15 U.S.C. § 1125(a)(1)(A); (2) unjust compensation and joint copyright; and (3) breach of implied-in-fact contract.  ECF No. 11 at ¶¶ 27–46.  As relief, Titan seeks, among other things, certain injunctive and declaratory relief, and to recover monetary damages, costs and attorneys' fees from SRI.  *Id.*

The Parties

Plaintiff Titan Systems, LLC is a Maryland corporation that provides custom design and integration support of military systems vehicle applications.  *Id.* at ¶ 1; ECF No. 54-3 at ¶ 1.

Defendant SRI International is a California non-profit research institute that performs work in the national security and advanced system space and serves as a prime contractor and subcontractor on Government-funded programs.  ECF No. 11 at ¶ 2; ECF No. 54-3 at ¶¶ 8–10.

The Relationship Between Titan And SRI

As background, Greg Makrakis and Wendy Makrakis are the two principals of Titan.  ECF No. 54-3 at ¶¶ 6–7.  At the time of Titan's founding in 2019, Mr. Makrakis was employed by the United States Navy, where he served in roles related to testing, program management and contract evaluation.  *Id.* at ¶¶ 1 and 3.

During his tenure working for the United States Navy, Mr. Makrakis also briefly worked on the Minotaur project, which involved Navy-specific functions for the P-8 aircraft.  *Id.* at ¶ 4.  Mr. Makrakis retired from the Navy in December of 2020 and, thereafter, he became the President of Titan.  *Id.* at ¶¶ 5–6.

---

[1] The facts recited in this memorandum opinion are taken from the amended complaint; SRI's motion for summary judgment and the memorandum in support thereof; the parties' joint statement of undisputed facts; Titan's cross motion for partial summary judgment and the memorandum in support thereof; SRI's response in opposition to Titan's cross-motion for partial summary judgment and reply brief; Titan's reply brief; and the joint record.  ECF Nos. 11, 54, 54-1, 54-3, 57, 57-1, 60, 61, 62, 63, 64 and 67.  Unless stated otherwise, the facts contained herein are undisputed.

On November 3, 2020, SRI and Titan executed a mutual nondisclosure agreement ("MNDA") related to work on a project known as PMA-290.  ECF No. 54-3 at ¶ 11; ECF No. 62-6 (MNDA).  SRI contends that the MNDA was executed by SRI's contracts department.  ECF No. 54-1 at 3; ECF No. 62-6 at 2 (MNDA).  It is undisputed that the MNDA is the only non-disclosure agreement between Titan and SRI.  ECF No. 54-3 at ¶ 11.

In January 2021, SRI issued Subcontract PO-54067 to Titan, in connection with the PMA-290 project.  *Id.* at ¶¶ 12 and 14; ECF No. 62-7.  Under this contract, Titan would serve as a subcontractor to SRI for the project and draft test procedures for Naval Air Systems Command ("NAVAIR").  ECF No. 54-3 at ¶ 14.  It is undisputed that Subcontract PO-54067 is the only written contract between Titan and SRI.  *Id.*

The MADDIS Campaign

In late 2020, SRI and Titan began work on a project known as the Multi-Agency Data Dissemination and Interoperability Services ("MADDIS") Campaign.[2]  *Id.* at ¶ 16; ECF No. 11 at ¶ 9.  The purpose of the MADDIS Campaign was to lobby Congress to appropriate funds to the Navy to develop technology to address the issue of interoperability across military branches.  ECF No. 54-3 at ¶ 16.

SRI contends that the MADDIS Campaign began in 2020, while Titan's principal, Mr. Makrakis, was still employed by the Navy.  ECF No. 62-2 at J.R. 388 (Titan Dep. II Tr. at 84:7–15).  Titan does not directly dispute this fact, but it contends that Mr. Makrakis had already announced his retirement from the Navy, vacated his role, and moved Titan's offices to begin private operations, when he began work on the MADDIS Campaign.  ECF No. 57-1 at 5; ECF No. 62-2 at J.R. 315–16 and 495 (Titan Dep. II Tr. at 11:23–12:6 and 191:11–23).  Titan also contends that Mr. Makrakis developed and worked on the MADDIS Campaign on his own time, outside of his Navy duties.  ECF No. 57-1 at 5–6; ECF No. 62-1 at J.R. 16–18 (Titan Dep. I Tr. at 14:25–15:25 and 16:20–25).

In anticipation of lobbying Congress to appropriate funds in connection with the MADDIS Campaign, SRI and Titan prepared PowerPoint presentations related to the MADDIS technology and the Navy's need for funding to develop this technology.  ECF No. 54-3 at ¶ 18.  The parties

---

[2] MADDIS technology is designed to address the distribution of data across different agencies or organizations in a coordinated and secure manner.  ECF No. 54-3 at ¶ 16.

disagree about how extensively Titan and Mr. Makrakis were involved in the MADDIS Campaign.  *Id.* at ¶ 20.

In this regard, Titan alleges that Mr. Makrakis was almost exclusively responsible for drafting the early versions of the MADDIS PowerPoint presentation.  *Id.*  But SRI contends that Mr. Makrakis's role was more administrative.  *Id.*[3]  Nevertheless, it is undisputed that an employee of SRI, William Battaglia, had several conversations with Mr. Makrakis about doing business together on the MADDIS Campaign and that Mr. Battaglia met with Mr. Makrakis to discuss the matter at Titan's offices.  ECF No. 54-3 at ¶ 21.

Titan also contends that the parties verbally agreed to an equitable share of the work and profits related to the MADDIS Campaign.  *Id.* at ¶ 48; ECF No. 11 at ¶ 11.  In this regard, Mr. Makrakis testified during his deposition that in "my view of equitable is 50 percent.  It's just the way I interpret it.  You may interpret it different.  But that's the way I've always viewed it." ECF No. 62-1 at J.R. 108 (Titan Dep. I Tr. at 106:5–8).

It is undisputed that the parties never agreed in writing to a specific percentage, specific formula, or means of allocating profit-sharing, or scope for shared work.  ECF No. 54-3 at ¶ 48. In this regard, SRI contends that neither Mr. Battaglia, nor the other employees of SRI that Titan identifies as being involved in the parties' negotiations, had the actual authority to bind SRI to a teaming agreement with Titan.  *Id.* at ¶ 47.

It is undisputed that SRI and Titan jointly briefed a potential government client, Dr. Michael Zatman of OSD (R&E), in connection with the MADDIS Campaign.  *Id.* at ¶ 24.  But Dr. Zatman ultimately did not serve as the Navy's point person for receiving funding from Congress.  *Id.*  After the meeting with Dr. Zatman, SRI independently conducted additional briefings to Navy personnel, including a briefing with Scott Bewley of the Navy's Digital Integration Support Cell ("DISC").  *Id.* at ¶ 25.  Mr. Bewley ultimately served as the point person for the Navy for receiving funding from Congress.  *Id.*

---

[3] The early iterations of the MADDIS PowerPoint presentation attached to the complaint have a confidentiality footer, which reads "Contains proprietary and business sensitive strategies relative to Titan Systems and SRI."  ECF Nos. 1-3, 1-4, 1-5 and 54-3 at ¶ 22.  This footer does not appear on any version of the PowerPoint presentation that SRI has been able to locate throughout this litigation.  ECF No. 54-3 at ¶ 22.  Titan has not produced a document to show that it sent SRI a version of the PowerPoint presentation that contains the confidentiality footer.  *Id.*

On or about January 29, 2021, SRI drafted an updated version of the MADDIS PowerPoint presentation, without further input from Titan. *Id.* at ¶ 26; ECF No. 1-7. Given this, SRI contends that Titan has not identified copyrightable overlapping features between the earlier versions of the PowerPoint presentation that Mr. Makrakis helped prepare (ECF Nos. 1-3, 1-4 and 1-5) and the subsequent PowerPoint presentation that SRI prepared and presented to Congress (ECF No. 1-7). *See* ECF No. 62-1 at J.R. 162–67 (Titan Dep. I Tr. at 160:22–165:7).

In this regard, it is undisputed that SRI only used the term "MADDIS" in its internal communications with Titan, and with certain government officials, during the period December 2020 to January 2021. ECF No. 54-3 at ¶ 27. It is also undisputed that SRI worked independently with a government relations and lobbying firm to submit its briefing materials on the MADDIS Campaign to Congress. *Id.* at ¶ 28.

SRI also met with members of Congress and their staff to lobby Congress to appropriate funds for the Navy to develop the MADDIS technology. *Id.* It is undisputed that Titan was not invited to, and did not attend, these meetings. *Id.*

Congress appropriated funds to the Navy to develop the MADDIS technology in FY21, FY22 and FY24. *Id.* at ¶ 29. This funding totaled approximately $3 million in FY21, $6 million in FY22, and $12 million in FY24, for a total appropriation of $21 million. *Id.* at ¶ 30.

After Congress provided funding for the Navy to develop MADDIS technology, the Navy awarded a prime contract for MADDIS-related work to SRI, for Project #101383, and a subcontract for MADDIS-related work to SRI, Project #101504. *Id.* at ¶ 31; ECF No. 62-14 at J.R. 992–94 (Decl. of Brandon Gravett at ¶¶ 5, 9, 12 and 16). And so, SRI has received gross revenues of approximately $2,450,005.28 (Project #101383) and $11,403,791.31 (Project #101504), respectively for this work. ECF No. 54-3 at ¶ 31; ECF No. 62-14 at J.R. 993 and 995 (Decl. of Brandon Gravett at ¶¶ 11, 19).[4]

It is undisputed that Titan did not participate in the formal proposal process for these contracts. *Id.* at ¶ 33. It is also undisputed that Titan did not receive any proceeds from Projects #101383 or #101504, or invoice SRI for any MADDIS-related work. *Id.* at ¶¶ 33–34. Titan also

---

[4] SRI's profits on these projects, as of December 2024, are $165,705.00 for Project #101383 and negative $49,321 for Project #101504. ECF No. 54-2 at ¶ 32; ECF No. 62-14 at J.R. 993 and 995 (Decl. of Brandon Gravett at ¶¶ 11 and 19).

acknowledges that it has not been excluded from any procurement due to SRI's use of the term MADDIS in the PowerPoint presentation.  *Id.* at ¶ 36.

The MADDIS Mark

On October 15, 2023, Titan applied for registration of the trademark "MINOTAUR MULTI AGENCY DATA DISSEMINATION AND INTEROPERABILITY SERVICES (MADDIS)," and Titan obtained the trademark on March 4, 2025.  *Id.* at ¶ 38.  In its trademark application, Titan claimed first use in commerce on January 3, 2021.  *Id.*

On April 14, 2025, Titan applied for registration of the trademark "MULTI-AGENCY DATA DISSEMINATION AND INTEROPERABILITY SERVICES (MADDIS)" (the "MADDIS Mark").  *Id.* at ¶ 39.  In the trademark application, Titan claimed first use in commerce on November 20, 2020.  *Id.*

The parties disagree about whether Titan has used the MADDIS Mark in commerce.  In this regard, Titan contends that it used the MADDIS Mark in interstate commerce as early as November 20, 2020, in an email from Wendy Makrakis to Mr. Battaglia.  ECF No. 11-1.  Titan also contends that it used the MADDIS Mark in a subsequent email from Mr. Makrakis to Kurt Dustin of SRI and others on January 14, 2021.  ECF Nos. 63 and 64.

Titan also contends that it used the MADDIS Mark on the company's website.  ECF No. 67-1 at 6.  But SRI contends that the MADDIS Mark did not appear on Titan's website until 2024, after this litigation commenced.  *Id.* at 1.

The parties also disagree about whether SRI has used a trademark that is similar to the MADDIS Mark.  In this regard, Titan alleges that SRI used a mark confusingly similar to the MADDIS Mark in connection with the MADDIS Campaign.  *See* ECF No. 1-7; ECF No. 57-1 at 12–13.  To support this claim, Titan alleges that Mr. Bewley was unaware that Titan was involved in the drafting of early versions of the MADDIS PowerPoint presentation (ECF Nos. 1-3, 1-4, and 1-5).  ECF No. 54-3 at ¶ 37; ECF No. 62-1 at J.R. 65–71 (Titan Dep. I Tr. at 63:16–69:11).  Titan also alleges that Lieutenant Commander Dave Gerda, another government official who was briefed during the MADDIS Campaign, was also confused by the MADDIS PowerPoint presentation, because he was unaware of Titan's involvement in the campaign.  ECF No. 57-1 at 10; ECF No. 62-1 at J.R. 66–74 (Titan Dep. I Tr. at 64:3–72:11).

But, there is no dispute that Titan did not conduct any consumer surveys concerning the MADDIS Mark.  *Id.* at ¶ 35; ECF No. 62-8 at J.R. 955 (Titan's Responses to SRI's Requests for

Admission No. 4).  It is also undisputed that Titan has not provided any invoices, sales, or other evidence to show that it used the MADDIS Mark in commerce.  ECF No. 54-3 at ¶ 35.

The MADDIS Copyrights

Titan also registered a copyright entitled "Multi-Agency Data Dissemination and Interoperability Services" (Copyright Registration Number TX 9-340-181) (the "First MADDIS Copyright") on November 14, 2023, with a registration decision date on December 13, 2023.  *Id.* at ¶ 40.  The date of first publication claimed for the MADDIS Copyright is January 3, 2021.  *Id.* The author claimed is Titan Systems, LLC.  *Id.*; *see also* ECF No. 1-3.

Titan registered a second copyright entitled "Multi-Agency Data Dissemination and Interoperability Services (MADDIS)" (Registration Number TXu 2-409-862) (the "Second MADDIS Copyright") on December 1, 2023, with a registration decision date on January 30, 2024.  *Id.* at ¶ 41.  The date of completion/publication claimed is 2021.  *Id.*; *see also* ECF No. 1-4.

Titan registered another copyright entitled "Multi-Agency Data Dissemination and Interoperability Services (MADDIS)" (Registration Number TXu 2-409-878) (the "Third MADDIS Copyright") on December 5, 2023, with a registration decision date on January 30, 2024.  *Id.* at ¶ 42.  The date of completion/publication claimed is 2021.  *Id.*; *see also* ECF No. 1-5.

Lastly, Titan registered a copyright entitled "Minotaur Family of Services (MFoS) Multi-Agency Data Dissemination and Interoperability Services (MADDIS) - SRI Support" (Registration Number TXu 2-404-678) on November 30, 2023, with a registration decision date on December 28, 2023.  *Id.* at ¶ 43.  The date of completion/publication claimed is 2021.  *Id.*; *see also* ECF No. 1-7.

It is undisputed that Titan did not request permission from SRI before filing for trademark or copyright protection related to the MADDIS Mark and the MADDIS Copyrights.  *Id.* at ¶ 44. Titan has also not produced a written assignment of copyright or trademark from Mr. Makrakis to Titan.  *Id.* at ¶ 45.

The Plaintiff's Claims

Titan asserts three claims against SRI in the amended complaint.  First, in Count I of the amended complaint, Titan alleges that SRI violated its trademark rights under the Lanham Act, pursuant to 15 U.S.C. § 1125(a)(1)(A), because SRI used the MADDIS Mark in its PowerPoint

presentation to Congress and to other government officials, causing a likelihood of confusion. ECF No. 11 at ¶¶ 28–34.

Second, in Count II of the amended complaint, Titan asserts an unjust compensation/joint copyright claim against SRI, alleging that Titan and SRI jointly owned a registered copyright in the January 29, 2021, MADDIS PowerPoint presentation and that SRI derived a benefit from using earlier versions of the MADDIS PowerPoint presentation to develop other briefing documents that SRI later presented to Congress without the permission of Titan. *Id.* at ¶¶ 36–42.

In Count III of the amended complaint, Titan asserts a breach of implied-in-fact contract claim against SRI, alleging that SRI and Titan mutually entered into an implied-in-fact contract, whereby the parties agreed to work together on the MADDIS Campaign and to each receive a "fair share" of the business obtained as a result of the campaign. *Id.* at ¶¶ 44–46. And so, Titan seeks, among other things, certain injunctive and declaratory relief and to recover monetary damages, costs and attorneys' fees from SRI. *Id.*

Lastly, SRI asserts two affirmative defenses to Titan's claims. ECF No. 52 at 11. Relevant to the pending cross-motions, SRI alleges in its second affirmative defense that Titan's copyright-related claims are barred as a matter of law, because Mr. Makrakis contributed to the MADDIS PowerPoint presentation while he was still a Navy employee and work created by the United States Government is not protectable under copyright law. *Id.* And so, SRI seeks to dismiss Titan's copyright claims. *Id.*

## B. Relevant Procedural Background

Titan commenced this matter on May 1, 2024. ECF No. 1. On June 20, 2024, Titan filed an amended complaint. ECF No. 11. On June 30, 2025, SRI filed an amended answer to Titan's amended complaint, asserting two affirmative defenses. ECF No. 52.

On August 7, 2025, SRI filed a motion for summary judgment, pursuant to Fed. R. Civ. P. 56, and a memorandum in support thereof. ECF Nos. 54 and 54-1. On August 28, 2025, Titan filed a response in opposition to SRI's summary judgment motion and a cross-motion for partial summary judgment, pursuant to Fed. R. Civ. P. 56, and a memorandum in support thereof. ECF Nos. 57 and 57-1.

On September 18, 2025, SRI filed a combined opposition to Titan's cross-motion for partial summary judgment and a reply brief. ECF No. 60. On October 9, 2025, Titan filed a reply brief. ECF No. 61.

8

The parties' cross-motions for summary judgment having been fully briefed, the Court resolves the pending motions.

## III.   LEGAL STANDARDS

### A.    Fed. R. Civ. P.  56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).  But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim.  *See Celotex Corp.*, 477 U.S. at 322-23.  Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Id.* at 323.  And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997).  And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

9

When the parties have filed cross-motions for summary judgment, the Court must "review each motion separately on its own merits to 'determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).  And so, "[w]hen considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Id.* (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

**B.     Section 1125(a)(1)(A) Of The Lanham Act**

Section 1125(a)(1)(A) of the Lanham Act provides that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).  To prevail on a claim for unfair competition under Section 1125(a)(1)(A) of the Lanham Act, a plaintiff must prove that it has a valid, protectable mark. *See id.*; *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 523 (4th Cir. 2002) (finding that a merely descriptive mark without secondary meaning is not protectable).  This showing requires proof that: (1) the mark is distinctive—either inherently or through secondary meaning—and (2) the plaintiff used the mark "in commerce" to identify the source of goods or services. *See Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco*, 329 F.3d 359, 363 (4th Cir. 2003).

In this regard, the Federal Circuit has held that the "use in commerce" requirement applies to both trademarks and service marks. *Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1357 (Fed. Cir. 2009).  For trademarks, the "use in commerce" requirement is met when a mark is "(1) placed on the good or container, or on documents associated with the goods if the nature of the goods makes placement on the good or container impracticable, and (2) that good is then 'sold or

10

transported in commerce.'" *Id.* (quoting 15 U.S.C. § 1127 (2006)).  For service marks, the "use in commerce" requirement is met when: "(1) a mark is 'used or displayed in the sale or advertising of services' and (2) either (i) the services are 'rendered in commerce' or (ii) the services are 'rendered in more than one State or in the United States and a foreign country and the person rendering those services is engaged in commerce in connection with the services.'" *Id.* (quoting 15 U.S.C. § 1127 (2006)).

If a plaintiff has a valid, protectable mark, it then must show that the defendant's use of the mark creates a likelihood of confusion among relevant consumers, to make an unfair competition claim.  *See* 15 U.S.C. § 1125(a)(1)(A).  The Court examines the following nine factors when evaluating a likelihood of confusion under the Lanham Act:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

*George & Co. LLC v. Imagination Ent. Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009).  "[E]vidence of actual confusion is 'often paramount' in the likelihood of confusion analysis."  *Id.* (quoting *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 804 (4th Cir.2001)).

### C.    Unjust Enrichment

Unjust enrichment is a remedy "to provide relief for a plaintiff when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services provided."  *Amaya v. DGS Constr., LLC*, No. 22-1189, 2023 WL 3034326, at *4 (4th Cir. Apr. 21, 2023) (quoting *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 (Md. 2000) (internal quotations omitted)).  "In an unjust enrichment case, 'there has been no agreement, the defendant has no prior expectations either as to value or as to risk, and so the law of restitution simply returns the defendant to the status quo by disgorging the value of the benefit actually received.'"  *Id.* (quoting *Dolan v. McQuaide*, 79 A.3d 394, 403 (Md. App. 2013)).  And so, to prevail on an unjust enrichment claim under Maryland law, a plaintiff must show: (1) it conferred a benefit on the defendant; (2) the defendant had an appreciation or knowledge of the benefit; and (3) it would be inequitable for the defendant to retain the benefit without payment for the value of the benefit.  *See Yost v. Early*, 589 A.2d 1291, 1302 (Md. Ct.

11

Spec. App. 1991); *see also Lacks v. Ultragenyx Pharm., Inc.*, 734 F. Supp. 3d 397, 408 (D. Md. 2024). "A benefit 'denotes any form of advantage,' including the 'advantage for which a person ordinarily must pay' or where a plaintiff 'saves' a defendant 'from expense or loss.'" *Amaya*, 2023 WL 3034326, at *4 (quoting Restatement (First) of Restitution § 1 cmt. b (1937)).

**D.    The Copyright Act**

The Copyright Act defines a "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. The Fourth Circuit has held that, for a work to be a "joint work," there must be: (1) a copyrightable work, (2) two or more "authors," and (3) a mutual intent of the authors to merge their work. *Brown v. Flowers*, 196 F. App'x 178, 186 (4th Cir. 2006) (Gregory, J. concurring in part) (citing *Thomson v. Larson*, 147 F.3d 195, 199 (2d Cir. 1998) and *Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000)). In addition, the Copyright Act provides that "[c]opyright protection . . . is not available for any work of the United States Government," meaning that works authored by employees of the United States Government are not afforded copyright protection. 17 U.S.C. § 105.

**E.    Implied-In-Fact Contracts**

Under Maryland law, the existence of an implied-in-fact contract, unlike an express contract, is evidenced by the parties' "conduct, rather than an explicit set of words." *State Constr. Corp. v. Slone Assocs., Inc.*, 385 F. Supp. 3d 449, 463 (D. Md. 2019). "A breach of an implied-in-fact contract claim must plausibly aver the existence of an agreement, that is, 'mutual assent (offer and acceptance),' to an agreement 'definite in its terms,' in exchange for 'sufficient consideration.'" *Innovations Surgery Ctr., P.C. v. United Healthcare Ins. Co.*, 722 F. Supp. 3d 582, 592 (D. Md. 2024).

In this regard, Maryland courts have held that an implied-in-fact agreement is sufficiently "definite," when the meaning of the terms in such agreement can be "ascertained to a reasonable degree of certainty." *Id.* (quoting *Mogavero v. Silverstein*, 790 A.2d 43, 50 (Md. Ct. Spec. App. 2002)). "But where asserted terms are too vague or nonspecific such that the parties cannot know what they are 'called upon by its terms to do,' then a contract has not been formed." *Id.* (quoting *Mogavero*, 790 A.2d at 50). And so, "[w]hether oral or written, a contract must express with certainty the nature and extent of the parties' obligations and the essential terms of the agreement." *Boshea v. Compass Mktg., Inc.*, No. 21-309, 2024 WL 3729105, at *16 (D. Md.

12

Aug. 7, 2024), *reconsideration denied*, No. 21-309, 2024 WL 4732773 (D. Md. Nov. 8, 2024). If the agreement omits an important term or is vague or indefinite with respect to that term, then the agreement is not enforceable.  *Id.*

To have mutual assent, the parties must also have intended to be bound by the agreement. *Cochran v. Norkunas*, 919 A.2d 700, 708–09 (2007).  In this regard, Maryland courts have identified several factors for the Court to consider when analyzing whether the parties intended to be bound by an agreement:

> (1) the language of the preliminary agreement, (2) the existence of open terms, (3) whether partial performance has occurred, (4) the context of the negotiations, (5) the custom of such transactions, such as whether a standard form contract is widely used in similar transaction, (6) whether the agreement has few or many details, (7) whether the amount involved is large or small, and (8) whether it is a common or unusual contract.

*Id.* (citations omitted); *see also* Restatement (Second) of Contracts § 27, cmt. c.

## IV.  LEGAL ANALYSIS

SRI has moved for summary judgment on Titan's claims, pursuant to Fed. R. Civ. P. 56, upon the following five grounds: (1) the undisputed material facts show that Titan's breach of implied-in-fact contract claim fails as a matter of law, because there is no evidence of mutual assent to enforceable terms, no person interfacing with Titan had actual or apparent authority to enter into a contract on behalf of SRI and the terms of the MNDA disclaim any alleged contract; (2) the undisputed material facts show that Titan's unjust compensation and joint copyright claim fails, because Titan conferred no cognizable benefit on SRI and SRI did not use Titan's materials without permission; (3) the undisputed material facts show that Titan's Lanham Act claim fails, because Titan has no valid trademark rights and there is no likelihood of confusion; (4) Titan cannot establish causation or damages for any of its claims; and (5) Titan's joint copyright claims are also precluded, because Titan's contributions were made by a government employee. ECF No. 54-1.  And so, SRI requests that the Court grant its motion for summary judgment and enter judgment summarily in its favor on all claims in this matter.  *Id*. at 30.

Titan counters that SRI is not entitled to summary judgment, because: (1) there is sufficient evidence to show that: (a) an agreement was formed between Titan and SRI; (b) the SRI employees who interacted with Titan had the authority to enter into a contract; and (c) the terms of the MNDA do not disclaim a future contract between the parties; (2) Titan can show that it

13

conferred a benefit on SRI, to support its unjust compensation/joint copyright claim; (3) Titan's Lanham Act claim is also supported by the evidence, because Titan has a protectable trademark and SRI's use of the MADDIS Mark created a likelihood of confusion; (4) Titan can establish causation and quantifiable damages in this case; and (5) Titan's contributions to the MADDIS PowerPoint presentation and MADDIS Campaign were made independent of Mr. Makrakis's work for the Navy.  ECF No. 57-1 at 20–40.  And so, Titan requests that the Court deny SRI's motion for summary judgment.  *Id*. at 40.

Titan has also moved for summary judgment on its Lanham Act and breach of implied-in-fact contract claims, in Counts I and III of the amended complaint, and on SRI's second affirmative defense, pursuant to Fed. R. Civ. P. 56, upon the following three grounds: (1) SRI is liable under the Lanham Act, because Titan owns a valid, protectable trademark and SRI used a confusingly similar mark in commerce; (2) SRI is liable for breach of an implied-in-fact contract, because the undisputed material facts show that SRI requested services that Titan provided and SRI never paid for these services; and (3) SRI cannot prevail on its second affirmative defense, because any work performed on the MADDIS PowerPoint presentation by Mr. Makrakis was not part of his official duties for the Navy.  *Id.* at 10–20.  And so, Titan requests that the Court enter judgment summarily in its favor on its Lanham Act and breach of implied-in-fact contract claims and SRI's second affirmative defense.  *Id.* at 40.

For the reasons that follow, there are material facts in dispute in this case regarding whether Titan used the MADDIS Mark in commerce, and whether there is a likelihood of consumer confusion with regard to the use of the MADDIS Mark, that preclude entry of summary judgment on Titan's Lanham Act claim in Count I of the amended complaint.  But the undisputed material facts show that Titan cannot prevail on its unjust compensation and joint copyright claim in Count II of the amended complaint, because Titan did not confer a benefit on SRI with regards to the MADDIS Campaign.

The undisputed material facts also show that Titan cannot prevail on its breach of implied-in-fact contract claim in Count III of the amended complaint, because there was no mutual assent between Titan and SRI to any enforceable contract terms.  Lastly, SRI has not shown that it is entitled to summary judgment on Titan's request for damages related to Titan's Lanham Act claim.  And so, the Court: (1) GRANTS-in-PART and DENIES-in-PART SRI's motion for summary judgment (ECF No. 54); (2) DENIES Titan's cross-motion for partial summary

14

judgment (ECF No. 57); (3) ENTERS JUDGMENT summarily in favor of SRI on Counts II and III of the amended complaint (ECF No. 11); and (4) DISMISSES Counts II and III of the amended complaint.

### A.     Summary Judgment Is Not Warranted On Titan's Lanham Act Claim

As an initial matter, the Court declines to grant SRI's motion for summary judgment or Titan's cross-motion for partial summary judgment on Titan's Lanham Act claim in Count I of the amended complaint.  The evidence before the Court makes clear that there are material facts in dispute in this case regarding whether Titan used the MADDIS Mark in commerce and whether there is a likelihood of consumer confusion with regards to the MADDIS Mark.

To prevail on a claim for unfair competition under Section 1125(a)(1)(A) of the Lanham Act, Titan must prove that it has a valid, protectable mark.  *See* 15 U.S.C. § 1125(a)(1)(A); *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 523 (4th Cir. 2002) (finding that a merely descriptive mark without secondary meaning is not protectable).  This showing requires proof of two things, that: (1) the mark is distinctive—either inherently or through secondary meaning— and (2) Titan used the mark "in commerce" to identify the source of goods or services.  *See Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco*, 329 F.3d 359, 363 (4th Cir. 2003).  And so, for service marks, the "use in commerce" requirement is met when: "(1) a mark is 'used or displayed in the sale or advertising of services' and (2) either (i) the services are 'rendered in commerce' or (ii) the services are 'rendered in more than one State or in the United States and a foreign country and the person rendering those services is engaged in commerce in connection with the services.'" *Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1357 (Fed. Cir. 2009) (quoting 15 U.S.C. § 1127 (2006)).

If Titan can show that it has a valid, protectable mark, it then must show that SRI's use of the MADDIS Mark creates a likelihood of confusion among relevant consumers, to prevail on an unfair competition claim.  *See* 15 U.S.C. § 1125(a)(1)(A).  The Court examines nine factors to evaluate likelihood of confusion under the Lanham Act:

(1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

*George & Co. LLC v. Imagination Ent. Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009).

In this case, the parties disagree about the first element of Titan's Lanham Act claim—whether Titan used the MADDIS Mark in commerce. In this regard, SRI argues that Titan never used the MADDIS Mark "in commerce," because Titan never marketed products or services under the name MADDIS and never distributed public-facing materials that would qualify as commercial branding, or solicitation of customers. ECF No. 54-3 at ¶¶ 27–29. To support this argument, SRI points to the following evidence: (1) certain email communications identified by Titan as use in commerce, that SRI maintains were not aimed at consumers or the general public and were not in connection with the promotion or sale of any goods or services in the commercial marketplace (ECF No. 54-3 at ¶¶ 27–29; ECF No. 62-2 at J.R. 403–09 (Titan Dep. II, Tr. at 99:17–105:10)) and (2) the absence of evidence to show that the website page identified by Titan as using the MADDIS Mark was actually displayed on Titan's website during the relevant time period (ECF No. 54-4 at ¶¶ 2–4; ECF No. 62-6).

But Titan counters that it used the MADDIS Mark in interstate commerce as early as November 20, 2020, in an email from Wendy Makrakis to Mr. Battaglia. ECF No. 11-1. To support this claim, Titan provides a copy of the subject email. *Id.* Titan also argues that it used the MADDIS Mark in a subsequent email from Mr. Makrakis to Kurt Dustin of SRI and others, on January 14, 2021, and Titan also provides a copy of this email. *See* ECF Nos. 63 and 64. In addition, Titan contends that it used the MADDIS Mark on the company's website, and Titan provides a screenshot of its website, showing the MADDIS Mark. ECF No. 67-1 at 6.

Given this, there are material facts in dispute in this case regarding whether, and when, Titan used the MADDIS Mark in commerce, that must be resolved by the finder of fact. *See Aycock*, 560 F.3d at 1357.

Summary judgment is also not warranted on Titan's Lanham Act claim, because there are material facts in dispute regarding whether there is a likelihood of confusion among relevant consumers, due to SRI's alleged use of the MADDIS Mark. As discussed above, Titan must also

16

show that SRI's use of the MADDIS Mark creates a likelihood of confusion among relevant consumers, to prevail on its Lanham Act claim. *See* 15 U.S.C. § 1125(a)(1)(A). One of the factors that the Court may consider in evaluating likelihood of confusion under the Lanham Act is actual confusion. *George & Co. LLC v. Imagination Ent. Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009).

In this case, SRI argues that there can be no likelihood of confusion with regard to the MADDIS Mark, because: (1) Titan has not identified an instance in which any recipient of SRI's government-facing briefings was confused as to the source of the MADDIS Campaign materials; (2) Titan conducted no consumer survey, identified no misdirected communication and received no inquiries suggesting marketplace confusion; (3) Titan admitted that it was not excluded from any procurement due to SRI's use of the term MADDIS; and (4) Mr. Makrakis testified that there was no confusion at all. ECF No. 54-1 at 25. But, Titan counters that a Navy official, Scott Bewley, was actually confused by SRI's use of the MADDIS Mark in its PowerPoint presentation, because Mr. Bewley was unaware that Titan was involved in the drafting of earlier versions of MADDIS PowerPoint presentation. ECF Nos. 1-3, 1-4, 1-5 and ECF No. 62-1 at J.R. 65–74 (Titan Dep. I Tr. at 63:16–72:11). Titan also contends that Lieutenant Commander Dave Gerda, another government official who was briefed during the MADDIS Campaign, was also confused by the MADDIS PowerPoint presentation, because Lt. Gerda was unaware of Titan's involvement in the campaign. ECF No. 54-3 at ¶ 37; ECF No. 57-1 at 10; ECF No. 62-1 at J.R. 65–74 (Titan Dep. I Tr. at 63:16–72:11).

Given this, there are material facts in dispute regarding whether either of the aforementioned government officials were actually confused by SRI's use of the MADDIS Mark. And so, again, summary judgment is not warranted on Titan's Lanham Act claim. Fed. R. Civ. P. 56.

For these reasons, the Court DENIES SRI's motion for summary judgment as to Count I of the amended complaint (ECF No. 54) and DENIES Titan's cross-motion for partial summary judgment as to Count I of the amended complaint (ECF No. 57).

### B. Titan Cannot Prevail On Its Unjust Compensation And Joint Copyright Claim

SRI's arguments to support its motion for summary judgment on Titan's unjust compensation and joint copyright claim are more convincing. To prevail on its unjust compensation and joint copyright claim, Titan must show that: (1) it conferred a benefit on SRI;

17

(2) SRI had an appreciation or knowledge of the benefit; and (3) it would be inequitable for SRI to retain the benefit without payment for the value of the benefit. *See Yost v. Early*, 589 A.2d 1291, 1302 (Md. Ct. Spec. App. 1991); *see also Lacks v. Ultragenyx Pharm., Inc.*, 734 F. Supp. 3d 397, 408 (D. Md. 2024). In this regard, the Fourth Circuit has held that "[a] benefit 'denotes any form of advantage,' including the 'advantage for which a person ordinarily must pay' or where a plaintiff 'saves' a defendant 'from expense or loss.'" *Amaya v. DGS Constr., LLC*, No. 22-1189, 2023 WL 3034326, at *4 (4th Cir. Apr. 21, 2023) (quoting Restatement (First) of Restitution § 1 cmt. b (1937)).

While a somewhat close question, the undisputed material facts in this case show that Titan cannot satisfy the first element of its claim, because Titan did not confer a benefit on SRI with regards to the MADDIS PowerPoint presentation. Titan appears to contend in this case that its contributions to the earlier versions of the MADDIS PowerPoint presentation conferred a benefit on SRI, because these contributions enhanced SRI's ability to become the awardee under several government contracts related to the MADDIS technology. ECF No. 57-1 at 26–28. But the unrebutted evidence in this case shows that any connection between Titan's contributions to earlier versions of the MADDIS PowerPoint presentation and the Navy's decision to award certain contracts to SRI is too remote and tenuous to support an unjust enrichment claim for several reasons.

First, the undisputed material facts show that, while Titan contributed to earlier versions of the MADDIS PowerPoint presentation, Titan did not assist SRI with the version of the MADDIS PowerPoint presentation that SRI ultimately presented to Congress to lobby for funding. ECF No. 54-3 at ¶ 26; ECF No. 1-7. It is also undisputed that Titan was not involved in any of the meetings that SRI had with congressional representatives to lobby Congress to appropriate funds to the Navy for the MADDIS Campaign. ECF No. 54-3 at ¶ 28. In addition, there is no dispute that the government official that Titan and SRI jointly briefed as a potential government client related to the MADDIS Campaign, Dr. Michael Zatman, did not ultimately serve as the point person at the Navy to receive Congressional funding related to MADDIS Campaign. *Id.* at ¶ 24. Given this, the undisputed material facts do not show that Titan's contributions to earlier versions of the MADDIS Campaign PowerPoint conferred a benefit on SRI in connection with its congressional briefings and outreach related to the MADDIS Campaign.

18

Second, the undisputed material facts also make clear that the Navy's procurement decisions regarding the two government contracts awarded to SRI are not connected to the early versions of the MADDIS PowerPoint presentation. In this regard, it is undisputed that the Navy awarded SRI two government contracts for MADDIS-related work. *Id.* at ¶ 31; ECF No. 62-14 at J.R. 992–94 (Decl. of Brandon Gravett at ¶¶ 5, 9, 12 and 16). But it is also undisputed that the Navy awarded these contracts after Congress appropriated funding for the MADDIS technology and many months after Titan contributed to the earlier versions of the MADDIS PowerPoint presentation. ECF No. 54-3 at ¶¶ 29–32.

The unrebutted evidence also shows that SRI did not propose, or include, Titan as a subcontractor in its proposals for these two government contracts. *Id.* at ¶ 33. Nor did Titan participate in the proposal process that SRI undertook to seek the award of these contracts. *Id.* It is also undisputed that Titan did not assist SRI in the execution of these two MADDIS-related government contracts and that Titan did not invoice SRI for any MADDIS-related work performed under these contracts. *Id.* at ¶¶ 33–34.

Titan also points to no evidence to show that the Navy's decisions to award the two government contracts to SRI were influenced, or based upon, the earlier versions of the MADDIS PowerPoint presentation. *See generally* ECF Nos. 57-1 and 61. And so, there is no evidence before the Court to show how any benefit that Titan conferred on SRI *via* the early versions of the MADDIS PowerPoint presentation helped SRI obtain the two government contracts that were ultimately awarded to SRI by the Navy.

Third, Titan's argument that SRI has been unjustly enriched, because the version of the MADDIS PowerPoint presentation that SRI used in its congressional briefings is a "joint work" under the Copyright Act, is also unconvincing. ECF No. 57-1 at 28–31. The Copyright Act defines a "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. Even if the Court accepts Titan's characterization of the MADDIS PowerPoint presentation is a "joint work" under the Copyright Act, Titan's claim must still fail for the reasons discussed above. Again, the undisputed material facts show that the Navy awarded the government contracts at issue through a separate procurement process, after Congress appropriated funding for the Navy to use MADDIS technology. ECF No. 54-3 at ¶¶ 29 and 33. The undisputed material facts also show that the Navy had discretion to award these

19

government contracts and that Titan was not involved in the proposal process to obtain the contracts. ECF No. 54-2 at ¶¶ 29, 31 and 33.

Given these undisputed material facts, Titan cannot show that its contributions to earlier versions of the MADDIS PowerPoint presentation conferred a benefit on SRI with regards to the award of SRI's government contracts. [5] And so, the Court GRANTS SRI's motion for summary judgment as to Count II of the amended complaint (ECF No. 54) and DENIES Titan's cross-motion for partial summary judgment on SRI's second affirmative defense (ECF No. 57). Fed. R. Civ. P. 56.

### C. Titan Cannot Prevail On Its Breach Of Implied-In-Fact Contract Claim

Turning to Titan's breach of implied-in-fact contract claim, the Court is also satisfied that SRI is entitled to summary judgment on this claim, because the undisputed material facts show that the parties did not mutually assent to the essential terms of this alleged contract. This Court has held that "[a] breach of an implied-in-fact contract claim must plausibly aver the existence of an agreement, that is, 'mutual assent (offer and acceptance),' to an agreement 'definite in its terms,' in exchange for 'sufficient consideration.'" *Innovations Surgery Ctr., P.C. v. United Healthcare Ins. Co.*, 722 F. Supp. 3d 582, 592 (D. Md. 2024). In this regard, an implied-in-fact contract is sufficiently "definite," when the meaning of the terms in such agreement can be "ascertained to a reasonable degree of certainty." *Id.* (quoting *Mogavero v. Silverstein*, 790 A.2d 43, 50 (Md. Ct. Spec. App. 2002)). "But where asserted terms are too vague or nonspecific such that the parties cannot know what they are 'called upon by its terms to do,' then a contract has not been formed." *Id.* (quoting *Mogavero*, 790 A.2d at 50). And so, the Court has held that, "[w]hether oral or written, a contract must express with certainty the nature and extent of the parties' obligations and the essential terms of the agreement." *Boshea v. Compass Mktg., Inc.*, No. 21-309, 2024 WL 3729105, at *16 (D. Md. Aug. 7, 2024), *reconsideration denied*, No. 21-309, 2024 WL 4732773 (D. Md. Nov. 8, 2024).

Here, the undisputed material facts make clear that the terms of the alleged agreement between SRI and Titan regarding the MADDIS Campaign are not sufficiently definite to be enforceable as an implied-in-fact contract. Titan points to the following evidence to show that the parties entered into an implied-in-fact contract regarding work on the MADDIS Campaign:

---

[5] Because SRI is entitled to summary judgment on Titan's unjust compensation and joint copyright claim, the Court need not address whether SRI can prevail on its second affirmative defense to this claim.

20

(1) a November 20, 2020 email, in which Mr. Battaglia requests and receives a draft MADDIS Campaign PowerPoint presentation from Titan (ECF No. 11-1); (2) certain discussions between Mr. Battaglia and Mr. Makrakis regarding a possible partnership on the MADDIS Campaign (ECF No. 54-3 at ¶ 21); (3) that Mr. Battaglia had a fob to access Titan's offices (*Id.*); (4) that SRI and Titan briefed a potential government client using a jointly prepared PowerPoint presentation that contained the MADDIS Mark (*Id.* at ¶ 24); and (5) that SRI used materials jointly prepared with Titan in its congressional campaign. ECF No. 57-1 at 19. But Titan does not identify any evidence to show what the essential terms of its alleged contract with SRI are, to establish that this agreement is an enforceable contract. *See Innovations Surgery*, 722 F. Supp. 3d at 592 (D. Md. 2024).

Rather, there is no dispute in this case that the parties did not reduce the key terms of the alleged agreement regarding the MADDIS Campaign to writing, including the essential terms about "a specific percentage, specific formula or means of allocating profit-sharing, or specific scope for shared work," related to the MADDIS Campaign. ECF No. 54-3 at ¶ 48. Titan also does not point to any evidence to show that the parties actually agreed to such essential terms related to their work on the MADDIS Campaign. *See generally* ECF Nos. 57-1 and 61. Indeed, while it is undisputed that Mr. Makrakis and Mr. Battaglia had certain conversations about Titan and SRI working together on the MADDIS Campaign (ECF No. 11 at ¶ 9), there is no evidence before the Court to show what the actual terms of this purported agreement would be. *See generally* ECF Nos. 54-3, 57-1 and 61. Given this, the Court agrees with SRI that the undisputed material facts in this case show that the parties did not reach an agreement that is definite in its essential terms, to form an enforceable contract related to the MADDIS Campaign. *See, e.g.*, *Innovations Surgery*, 722 F. Supp. 3d at 592.

Titan's breach of implied-in-fact contract claim is also problematic, because the undisputed material facts show that the parties did not intend to be bound by an agreement with regards to the MADDIS Campaign. Maryland courts have long held that the parties must show an intent to be bound by an agreement to establish mutual assent to contract. *Cochran v. Norkunas*, 919 A.2d 700, 708–09 (2007) (identifying factors to be considered when analyzing whether the parties intended to be bound by an agreement). As discussed above, there is no written instrument memorializing the alleged agreement by and between SRI and Titan in this case. ECF No. 54-3 at ¶¶ 11, 14 and 48. But, the undisputed material facts do make clear that Titan

21

and SRI customarily memorialize their contracts through a written agreement.  Notably, the other contract between SRI and Titan was in writing and signed by an employee in SRI's contract department.  ECF No. 54-3 at ¶¶ 11–12 and 14; ECF No. 62-6 at 2 (MNDA); ECF No. 62-7.  Titan also advances no evidence to show that SRI and Titan intended to deviate from this customary practice with regards to the MADDIS Campaign.  *See generally* ECF Nos. 57-1 and 61.

Given this, the undisputed material facts also show that the parties did not intend to be bound by a contract related to their work on the MADDIS Campaign.  *See Cochran*, 919 A.2d at 708–09.[6]  And so, the Court GRANTS SRI's motion for summary judgment as to Count III of the amended complaint (ECF No. 54) and DENIES Titan's cross-motion for partial summary judgment as to Count III of the amended complaint (ECF No. 57).  Fed. R. Civ. P. 56.

**D.    Summary Judgment Is Not Warranted On Titan's Damages Claim**

As a final matter, summary judgment is not warranted on SRI's remaining damages claim under the Lanham Act, because there are material facts in dispute about Titan's Lanham Act claim.  In its motion for summary judgment, SRI argues that Titan cannot recover damages in this case, because: (1) there is no link between Titan's work on the MADDIS Campaign and the government contracts that the Navy awarded to SRI and (2) Titan's claimed damages are purely speculative.  ECF No. 54-1 at 25–28.  While the Court agrees that Titan cannot show a sufficient connection between its early work on the MADDIS PowerPoint presentation and the subsequent award of two government contracts to SRI, there are material facts in dispute regarding Titan's Lanham Act claim that preclude entry of summary judgment on Titan's request to recover damages under the Lanham Act.

Notably, Titan seeks to recover damages under 15 U.S.C. § 1117(a), which allows for the recovery of damages for SRI's profits, any damages sustained by Titan as a result of the Lanham Act violation and the cost of this action.  ECF No. 11 at 11; *see also* 15 U.S.C. § 1117(a).  Given this, the material facts in dispute regarding whether SRI is liable to Titan for violating the

---

[6] SRI also argues that summary judgment is warranted on Titan's breach of implied-in-fact contract claim, because: (1) the SRI employees who communicated with Titan did not have actual or apparent authority to enter into a contract and (2) the terms of the parties' MNDA disclaimed any contract.  ECF No. 54-1 at 11–17.  The Court need not reach these issues, because the Court concludes that undisputed material facts show that there was no mutual assent by the parties to enter into a contract.

Lanham Act, are also relevant to determining whether Titan can recover any damages in connection with this claim.

And so, the Court declines to grant SRI's motion for summary judgment on Titan's request for damages under the Lanham Act.

**E.    CONCLUSION**

And so, for the foregoing reasons, the Court:

    (1) **GRANTS-in-PART** and **DENIES-in-PART** SRI's motion for summary judgment (ECF No. 54);

    (2) **DENIES** Titan's cross-motion for partial summary judgment (ECF No. 57);

    (3) **ENTERS JUDGMENT** summarily in favor of SRI on Counts II and III of the amended complaint (ECF No. 11); and

    (4) **DISMISSES** Counts II and III of the amended complaint.

A separate order has issued.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge